IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

**FILED**

NOV 0 9 2005

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| AVINASH RANGRA, | § | |
| ANNA MONC LOVA & | § | |
| All Other Public Officials in Texas, | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | C. A. No. P 05CV75 |
| | § | |
| FRANK D. BROWN, | § | |
| 83rd Judicial District Attorney | § | |
| GREG ABBOTT, | § | |
| Texas Attorney General, and | § | |
| THE STATE OF TEXAS | § | |
| Defendants. | § | |

## STATE DEFENDANTS' MOTION TO DISMISS

TO THE HONORABLE COURT:

In support of their motion to dismiss under FED. R. CIV. PRO. 12(b)(1) and -(6), Hon. Greg Abbott and the State of Texas ("State defendants") respectfully submit the following.

### INTRODUCTION AND NATURE OF THE CASE

This motion serves in lieu of an original answer by the State defendants to Plaintiffs' Original Complaint, Request for Injunctive Relief, & Request for Declaratory Judgment ("Complaint"). FED. R. CIV. PRO. 12(a)(4). The Court has granted leave to these defendants to exceed the ten-page limit under Local Rule CV-7(c). Docket no. 5.

The plaintiffs seek to have this Court become the first federal court ever to declare a state open meetings law unconstitutional. Mr. Rangra and Ms. Monclova, two members of the Alpine City Council, claim that the Texas Open Meetings Act, TEX. GOVT. CODE ch. 551, is unconstitutionally overbroad and vague, thereby offending the First Amendment to the U.S.

Constitution and TEX. CONST. art. I § 8.  Because this Court lacks jurisdiction and the plaintiffs cannot state a viable claim on the merits, the suit should be dismissed.

## STANDARDS FOR DISMISSAL

### I.   Federal Rule of Civil Procedure 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1009 (5th Cir. 1998).  "[T]he court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (internal quotation marks omitted).  "[T]he burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

### II.   Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), "[t]he court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief," that is, when "the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).  "When deciding a motion to dismiss under Rule 12(b)(6), the district court must accept the plaintiff's factual allegations as true and resolve doubts as to the sufficiency of the claim in the plaintiff's favor." *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001).  "In other words, a motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Ramming*, 281 F.3d at 161-62.

"However, dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir.1995) (brackets and internal citations omitted). "The Court is not required to conjure up unpled allegations in order to save a complaint, and conclusory allegations or legal conclusions masquerading as factual contentions will not suffice." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (citations omitted).

## FACTS

According to the plaintiffs' pleadings, Alpine City Council member Katie Elms-Lawrence sent a message by e-mail on October 21, 2004 to three fellow council members, including plaintiffs Rangra and Monclova. Complaint ¶¶ 8-9. The four members constituted a quorum of the council. *Id.* at ¶ 13.

In the message, Elms-Lawrence told members Rangra and Payne that she and council member Monclova had just conferred and agreed on the need for a special meeting of the council. Exhibit (attached to the Complaint).[1] She went on to tell Rangra and Payne that she and Monclova both felt that one of the bidders for a city contract "was the most impressive," so that there was "no need for interviewing another engineer at this time." *Id.* She then outlined further action that needed to be taken to complete the transaction and closed with, "Let us hear from you both." *Id.*

Rangra responded the next day, by e-mail, with copies to Monclova and Payne. *Id.* He promised to talk to the bidder in question and to contact the mayor to schedule a meeting, "as per

---

[1] Documents attached to the complaint may be considered in deciding a Rule 12(b)(6) motion. *United States ex rel Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004). Moreover, to decide jurisdiction on a motion under Rule 12(b)(1), the Court may look beyond the pleadings to resolve disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001).

your, Anna [Monclova's], and Manuel [Payne's] directions," and concluded that they "must reach some sort of decision" on the contract soon. *Id.*

In February of 2005, defendant Frank Brown, the district attorney for Brewster County, obtained an indictment against Rangra and Monclova for violating the Texas Open Meetings Act. Complaint ¶ 12. Less than three months later, on defendant Brown's motion, the district court dismissed the charges without prejudice. *Id.* at ¶ 16.

## ARGUMENT

**I.    The Plaintiffs' Claims Are Jurisdictionally Barred.**

> **A.    The Plaintiffs' Federal Claims Against the State of Texas are Jurisdictionally Barred by Eleventh Amendment Immunity.**

The plaintiffs' claims against the State of Texas, as a named defendant, must overcome the state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 341, 99 S.Ct. 1139, 1145 (1979). Absent a valid waiver or abrogation, Eleventh Amendment immunity bars claims for any relief, including prospective and equitable relief, against a state or state agency. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99 n. 8, 100, 104 S.Ct. 900, 907 n. 8, 908 (1984); *Alabama v. Pugh*, 438 U.S. 781, 781-82, 98 S.Ct. 3057, 3057-58 (1978); *Okpalobi v. Foster*, 244 F.3d 405, 411 (5th Cir. 2001) (en banc).

The plaintiffs may assert their federal claims for declaratory and injunctive relief against the Attorney General in his official capacity. *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy*, 506 U.S. 139, 146, 113 S. Ct. 684, 688 (1993). But, under the above-cited authorities, they cannot sue the State of Texas in this Court on federal constitutional claims.

**B.     The Plaintiffs' State Law Claims Against Both State Defendants are Jurisdictionally Barred by Eleventh Amendment Immunity.**

This Court lacks jurisdiction over the plaintiffs' claims under the Texas Constitution (Complaint ¶¶ 24-26) against the State defendants. *Pennhurst*, 465 U.S. at 105-06, 104 S.Ct. at 910-11 ("it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law").

**C.     The Plaintiffs Lack Standing.**

**1.     Standing is jurisdictional.**

The issue of "standing is jurisdictional, and may be raised at any time."[2] *Johnson v. City of Dallas*, 61 F.3d 442, 443-44 (5th Cir. 1995); *Allandale Neighborhood Assoc. v. Austin Transp. Study Policy Advisory Cmte*, 840 F.2d 258, 260 (5th Cir. 1988). The plaintiffs, as the parties invoking this Court's jurisdiction, bear the burden of persuasion on standing. *Delta Commercial Fisheries Ass'n v. Gulf of Mexico Fishery Mgmt Council*, 364 F.3d 269, 272 (5th Cir. 2004).

Each plaintiff "must support each element of standing just as [he/she] would support any other matter on which [he/she] bears the burden of proof." *Pelts & Skins, LLC v. Landreneau*, 365 F.3d 423, 427 (5th Cir. 2004). "A plaintiff's failure to establish one of the . . . elements of Article III standing deprives federal courts of jurisdiction to hear the plaintiff's suit." *Delta Commercial Fisheries Ass'n*, 364 F.3d at 273.

**2.     The plaintiffs do not allege facts showing a substantial likelihood of imminent prosecution.**

"In order to demonstrate that a case or controversy exists to meet the Article III standing

---

[2]   "Beyond the constitutional requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003).

requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer*, 341 F.3d at 358 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 103 S.Ct. 1660, 1665 (1983)). "Past exposure to illegal conduct" is not enough by itself to satisfy this requirement. *Id.* See also *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285-86 (5th Cir. 1992).

The plaintiffs allege that they face a threat of future prosecution because (1) the charges against them were dismissed without prejudice and (2) they "continue to maintain e-mail accounts, receive written materials through the [mail], and to have informal conversations with citizens and fellow elected officials regarding issues of public interest." Complaint ¶ 17; Brief in Support of Plaintiffs' Original Complaint ("Brief") at 3-7. They do not allege that they plan to use these vehicles to conduct public business requiring a vote of a quorum of the council.

The plaintiffs' authorities show that the foregoing is insufficient to establish a serious threat of future prosecution. For example, the plaintiffs rely heavily on *Navegar, Inc. v. United States*, 103 F.3d 994 (D. C. Cir. 1997). Brief at 4-5. However, in concluding that the plaintiff firearms manufacturers had standing to challenge a gun control law, the D. C. Circuit explained:

> The most important circumstance that the district judge overlooked is that the Act in effect singles out the [plaintiff]s as its intended targets, by prohibiting weapons that only the [plaintiff]s make. This fact sets this case apart from most others in which preenforcement challenges to the Act have been held nonjusticiable. It also makes the applicability of the statute to [plaintiff]s' business indisputable: if these provisions of the statute are enforced at all, they will be enforced against these [plaintiff]s for continuing to manufacture and sell the specified weapons . . .

*Id.* at 1000.

The plaintiffs do not and cannot allege that the Open Meetings Act singles them out as its intended targets, by prohibiting conduct that only they engage in. Consequently, neither plaintiff can

6

show that he or she "is immediately in danger of sustaining some direct injury" from the statute that is "both real and immediate [rather than] conjectural or hypothetical." *National Treasury Employees Union v. U.S. Dept. of the Treasury*, 25 F.3d 237, 242 (5th Cir. 1994) (quoting *Lyons*, 461 U.S. at 101-102, 103 S.Ct. at 1665).

   **3. The plaintiffs do not have standing to assert constitutional rights for conduct in their official capacity.**

   As discussed more fully in III below, the plaintiffs challenge a statute that regulates their conduct while acting in their official capacity as members of the Alpine City Council. In his/her official capacity, each plaintiff "assumes the identity of," and has no greater rights vis-a-vis the state than, the City of Alpine. *Hafer v. Melo*, 502 U.S. 21, 27, 112 S.Ct. 358, 362 (1991) (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312 (1989) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3104-05 (1985))).

   As a political subdivision of the State of Texas, the City of Alpine "has no constitutional rights to assert against the state of which it is a part." *Tex. Catastrophe Property Ins. Ass'n v. Morales*, 975 F.2d 1178, 1181 (5th Cir. 1992). *See also Town of Ball v. Rapides Parish Police Jury*, 746 F.2d 1049, 1051 n. 1 (5th Cir. 1984) (collecting cases).

   **4. The plaintiffs' suit does not fit within the narrow exception for First Amendment challenges.**

   As is evident from part II-A below, the plaintiffs' conduct, as they describe it in their pleadings, violated the Open Meetings Act. *See Brazos Valley Coalition for Life, Inc. v. City of Bryan, Tex.*, 421 F.3d 314, 323 (5th Cir. 2005) ("To the extent that [plaintiff]s assert . . . that [the statute] is defective in severable respects that are unrelated and do not apply (and have not been applied) to activities in which [plaintiff]s have alleged . . . that they engaged in (or desire or desired

or plan or planned to engage in), such arguments are not properly before us and [plaintiff]s lack at

least prudential standing to raise them"). Consequently, they must rely on an "extremely limited"

exception to the usual rules of standing, for claims alleging that a "statute's very existence may cause

others not before the court to refrain from constitutionally protected speech or expression." *J & B*

*Entertainment, Inc. v. City of Jackson*, 152 F.3d 362, 366 (5th Cir. 1998) (citing *Broadrick v.*

*Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916 (1973)).

However, the plaintiffs do not sufficiently differentiate their own situation from the

circumstances of third parties they allege (hypothetically) could be illegitimately prosecuted under

the Texas Open Meetings Act. *See Members of City Council of City of Los Angeles v. Taxpayers*

*for Vincent*, 466 U.S. 789, 801-02, 104 S.Ct. 2118, 2127 (1984).

## II.    The Texas Open Meetings Act Embodies Important Principals of Government Responsibility.

Before proceeding with argument on the merits, it is important to understand some key

aspects of the law challenged by the plaintiffs.

### A.    The Texas Open Meetings Act Protects Citizens From Secret Government.

The Texas Open Meetings Act was passed to give Texas citizens "government in the
sunshine"; that is, to safeguard the public's interest in knowing the workings of its
governmental bodies. It is based on the premise articulated by Justice Brandeis:
"Sunlight is said to be the best of disinfectants."

*Sierra Club v. Austin Transp. Study Pol.*, 746 S.W.2d 298, 299-300 (Tex. App. – Austin 1988, writ

denied) (quoting *Cox Enterp., Inc. v. Bd. of Trustees of Austin Indep. Sch. Dist.*, 706 S.W.2d 956,

960 (Tex. 1986), *and* BRANDEIS, OTHER PEOPLE'S MONEY 92 (1914 ed.) (ellipse omitted)).

Under the Act, "Every regular, special, or called meeting of a governmental body shall be

open to the public, except as provided by this chapter." TEX. GOVT. CODE § 551.002. The Alpine

City Council is a governmental body under the Act. *Id.* at § 551.001(3)(C).  Of significance for this case, a "meeting" is defined as:

> (A) a deliberation between a quorum of a governmental body, or between a quorum of a governmental body and another person, ***during which public business or public policy over which the governmental body has supervision or control*** is discussed or considered or during which the governmental body takes formal action;  *or*
> (B) . . . a gathering:
> (i) that is conducted by the governmental body or for which the governmental body is responsible;
> (ii) at which a quorum of members of the governmental body is present;
> (iii) that has been called by the governmental body;  and
> (iv) at which the members receive information from, give information to, ask questions of, or receive questions from any third person, including an employee of the governmental body, ***about the public business or public policy over which the governmental body has supervision or control***.  *The term does not include* the gathering of a quorum of a governmental body at a social function ***unrelated to the public business that is conducted by the body***, or the attendance by a quorum of a governmental body at a regional, state, or national convention or workshop, if formal action is not taken and any ***discussion of public business*** is incidental to the social function, convention, or workshop.  The term includes a session of a governmental body.

*Id.* at § 551.001(4) (emphasis added).  The Act makes it a misdemeanor for a member of a governmental body to either (1) participate in a closed meeting not allowed by the Act or (2) "knowingly conspire[] to circumvent [the Act] by meeting in numbers less than a quorum for the purpose of secret deliberations in violation of" the Act.  *Id.* at §§ § 551.143-144.

## B.     State Open Meetings Laws Have Been Regularly Upheld Against Constitutional Attack.

Texas is one of at least thirty-five states that have open meetings laws for governmental bodies such as city councils.  (The Appendix to this motion lists the other thirty-four.)  Although the statutes vary somewhat in specific details from state to state, they all embrace the principal expressed in § 551.002, that deliberations among members of governing bodies transacting public business

must be open to the public. *See, e.g., Davis v. East Baton Rouge Parish Sch. Bd.*, 78 F.3d 920, 930-31 (5th Cir. 1996) ("it is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy") (quoting Louisiana open meetings law and holding the trial court erred when it entered a confidentiality order "without considering whether the meetings that it ordered complied with the Louisiana Open Meetings Law").[3]

Although state open meetings laws date back to the 1960s and early 1970s (the Texas law was originally enacted in 1973), no federal court has ever held any of these laws unconstitutional. When such laws have been challenged in state court as overbroad and/or vague, under the First Amendment or equivalent state constitutional provisions, they have been regularly upheld. *E.g., see Neu v. Miami Herald Publishing Co.*, 462 So.2d 821, 825-26 (Fla. 1985) ("It is enough to say that the legislature has the power to require open meetings and that petitioners' argument has been rejected by the United States Supreme Court") (citing *Bd. of Pub. Instruction v. Doran*, 224 So.2d 693, 697-99 (Fla. 1969)); *People ex rel. Difanis v. Barr*, 414 N.E.2d 731, 737-38 (Ill. 1980) ("the Act . . . is neither vague, indefinite nor uncertain"); *State ex rel. Murray v. Palmgren*, 231 Kan. 524, 646 P.2d 1091, 1097-1100 (Kan. 1982); *Raton Public Service Co. v. Hobbes*, 417 P.2d 32, 36-37 (N. M. 1966); *Hilliary v. State*, 630 P.2d 791, 794 (Okl. Cr. 1981) ("Any confusion on the part of the [plaintiff]s" as to the law's meaning "results from their tenuous and distorted interpretation of the

---

[3] *See also Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1086-87 (9th Cir. 2003) (quoting Washington's Open Public Meetings Act); *Leventhal v. Vista Unified Sch. Dist.*, 973 F. Supp. 951, 959 (S. D. Cal. 1997) (quoting California's Brown Act); *Maxey v. Smith*, 823 F. Supp. 1321, 1331 n. 7 (N. D. Miss. 1993) (quoting Mississippi's open meetings law), *appeal dismissed*, 21 F.3d 1108 (5th Cir. 1994) (Table).

statute as reflected in their brief"); *Memphis Publ'g Co. v. City of Memphis*, 513 S.W.2d 511, 513 (Tenn. 1974).[4]

Although the foregoing decisions are not binding on this court, the conclusions of experienced jurists applying the same constitutional principals to similar state laws can be helpful for resolving the present case. The holdings of the foregoing cases are sound and the same result is warranted in this case.

**C.   Key Elements of the Texas Act are Also Found in Federal Law.**

State open meetings laws are modeled in many respects on the federal "Sunshine Act," 5 U.S.C. § 552b. *See R. R. Com'n of Tex. v. United States*, 765 F.2d 221, 230 (D. C. Cir. 1985) ("The Sunshine Act does not require that meetings be held in order to conduct agency business; [but] if meetings are held, they [must] be open to the public"). The Sunshine Act has never been held to be unconstitutionally overbroad or vague.

Under the federal statute, "the term 'meeting' means the deliberations of at least the number of individual agency members required to take action on behalf of the agency where such deliberations determine or result in the joint conduct or *disposition of official agency business . . .*" 5 U.S.C. § 552b(a)(2) (emphasis added). Consequently, "where the deliberations and discussions among agency members in fact 'determine or result in the joint conduct or disposition of official agency business,' they are meetings to which the Sunshine Act's open-meeting rule applies, no

---

[4] The one exception turned on a circumstance not present in this case. Because the criminal penalties for violations of Montana's open meetings law were in a separate statute, it was not clear that the criminal provision, which retained a previous definition, applied to a "meeting" as defined in a subsequent amendment to the open meetings law. *State v. Conrad*, 412, 643 P.2d 239, 241-43 (Mont. 1982). In the Texas statute, by contrast, the criminal penalties are contained within the Act. TEX. GOVT. CODE §§ 551.143-144.

matter how the agency may characterize them for its own internal purposes." *Pac. Legal Found. v. Council on Environmental Quality*, 636 F.2d 1259, 1266 (D. C. Cir. 1980).

**D.      Open Meetings Laws Safeguard Important First Amendment and Other Constitutional Values.**

It is ironic that, in support of their claims, the plaintiffs quote a line from the Supreme Court's *Bond* and *Sullivan* decisions, that "debate on public issues should be uninhibited, robust, and *wide-open*." Brief at 10 (emphasis added) (quoting *Bond v. Floyd*, 385 U.S. 116, 135, 87 S.Ct. 339, 349 (1966) (quoting *N. Y. Times v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 721 (1964))). The purpose of the Texas Open Meetings Act is to insure that debate leading to decisions on public business by local governing bodies such as city councils is "wide open."

As a consequence, one district court has held that adverse personnel action taken by city aldermen in closed session amounted to a deprivation of substantive due process. *Maxey*, 823 F. Supp. at 1331. *See also Leventhal v. Vista Unified Sch. Dist.*, 973 F. Supp. 951, 960 (S. D. Cal. 1997) (for a school board "[t]o relegate discussion on the education of a community's children to closed, back-room sessions would deprive the public of the most appropriate forum to debate these issues").

**III.    The Plaintiffs' Conduct, In their Official Capacity, Of Their Official Duties Is Not "Speech" Protected By The First Amendment.**

Relying heavily on *Bond v. Floyd, supra*, the plaintiffs contend that the Open Meetings Act is a content-based restriction on, and prior restraint of, the free speech of citizens who happen to hold office. Brief at 8-11, 21-24. However, the conduct at issue in this case is quite distinguishable from the speech protected in *Bond* and related cases.

In *Bond*, the Supreme Court held that the Georgia Legislature could not punish Rep. Bond

12

for the kind of speech – in that case, criticism of the war in Vietnam and expressions of approval for draft resisters – that would be afforded First Amendment protection "if *made by a private citizen.*" *Id.* at 135, 87 S.Ct. at 349 (emphasis added).   This holding is consistent with subsequent jurisprudence on the speech rights of public officials.  For this purpose, the rights of elected public officials are the same as those of public employees. *See Rash-Aldridge v. Ramirez*, 96 F.3d 117 (5th Cir. 1996) (per curiam) (member of the Laredo City Council).

Speech by a public employee or official is protected by the First Amendment from adverse action only when the employee or official speaks "primarily in his role as citizen," rather than as a public servant. *Terrell v. Univ. of Tex. Sys. Police*, 792 F.2d 1360, 1362 (5th Cir. 1986).  "[S]peech made in the role as [public] employee is [protected] only in limited cases" not applicable to this suit. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1051 (5th Cir. 1996). *See also Warnock v. Pecos County*, 116 F.3d 776, 780 (5thCir. 1997).

That the topic discussed in October of 2004 by a quorum of Alpine city council members was a matter of public concern, Complaint ¶ 23, does not by itself entitle the deliberations to First Amendment protection. *Terrell*, 792 F.2d at 1362 ("the mere fact that the topic of the [official]'s speech was one in which the public might or would have a great interest is of little moment . . . because almost anything that occurs within a public agency could be of concern to the public"). Instead, the "focus [is] on the hat worn by the [official] when speaking rather than on the 'importance' of the issue." *Gillum v. City of Kerrville,* 3 F.3d  117, 120-21 (5th Cir. 1994).

Regardless of where they are at the time or what means they use to communicate among themselves, when a quorum of the members of a city council exchange views on a matter for which action by a majority vote of the council is required, they are acting and speaking in their official

13

capacity as council members rather than as private citizens.  Thus, in *Rash-Aldridge*, the Fifth Circuit

rejected the § 1983 First Amendment claim against the Laredo city council for removing the plaintiff

council member as the city's representative on a regional planning board because she refused to

support a measure favored by a majority of the city council.

Like the plaintiffs here, Rash-Aldridge relied on *Bond v. Floyd* and *Miller v. Town of Hull*,

878 F.2d 523 (1st Cir. 1989) (Brief at 10-11).  But the Fifth Circuit "agree[d] with the trial court in

finding this case more analogous to the situation in *Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988

(5th Cir. 1992) (en banc), in which the school board fired its school superintendent for publicly

stating positions contrary to the board's policy choices for the school district."  *Rash-Aldridge*, 96

F.3d at 119.

The applicable law is perhaps best summarized by the Kansas Supreme Court, in rejecting

a challenge to that state's open meetings law premised on the same arguments advanced by the

plaintiffs here:

> [Plaintiff]s' claim reveals a basic misconception regarding the nature of a public
> official's position.  The First Amendment does indeed protect private discussions of
> governmental affairs among citizens.  Everything changes, however, when a person
> is elected to public office.  Elected officials are supposed to represent their
> constituents.  In order for those constituents to determine whether this is in fact the
> case they need to know how their representative has acted on matters of public
> concern.  Democracy is threatened when public decisions are made in private.
> Elected officials have no constitutional right to conduct governmental affairs behind
> closed doors.  Their duty is to inform the electorate, not hide from it.  The KOMA
> places no constraints on purely private discussions by public officials.  It regulates
> only the conduct of public business.  As such the KOMA is not unconstitutionally
> overbroad.

*Murray*, 646 P.2d at 1099.

IV.    **The Texas Open Meetings Act Is Not Unconstitutionally Overbroad Or Vague.**

Because, as shown above, the "speech" for which Rangra and Monclova were prosecuted is not protected by the First Amendment, the issues of overbreadth and vagueness are immaterial. Nevertheless, if they were applicable, the Act would still pass constitutional muster.

Overbreadth and vagueness are related but distinct concepts. *J&B Ent., Inc. v City of Jackson, MS.*, 152 F.3d 362, 366 (5th Cir. 1998). "[I]n cases involving a facial challenge to the overbreadth and vagueness of a statute, a court should first consider whether the statute is overbroad, and, assuming that it is not, then whether it is unconstitutionally vague." *CISPES v. Federal Bureau of Investigation*, 770 F.2d 468, 472 (5th Cir. 1985) (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191 (1982)).

A.    **The Texas Open Meetings Act is not Unconstitutionally Overbroad.**

1.    **Overbreadth is a narrow exception, sparingly applied.**

"The First Amendment doctrine of overbreadth is an exception to our normal rule regarding the standards for facial challenges." *Virginia v. Hicks*, 539 U.S. 113, 118, 123 S.Ct. 2191, 2196 (2003). But the exception is narrow.

> Facial challenges of this sort are especially to be discouraged. Not only do they invite judgments on fact-poor records, but they entail a further departure from the norms of adjudication in federal courts: overbreadth challenges call for relaxing familiar requirements of standing, to allow a determination that the law would be unconstitutionally applied to different parties and different circumstances from those at hand. Accordingly, we have recognized the validity of facial attacks alleging overbreadth (though not necessarily using that term) in relatively few settings, and, generally, on the strength of specific reasons weighty enough to overcome our well-founded reticence.

*Sabri v. United States*, 541 U.S. 600, 609-10, 124 S.Ct. 1941, 1948 (2004).

"Even though the challenge be based on the First Amendment, the overbreadth doctrine is

15

not casually employed." *Los Angeles Police Dept. v. United Reporting Pub. Corp.*, 528 U.S. 32, 39, 120 S.Ct. 483, 489 (1999). Because a holding that a statute is unconstitutionally "overbroad" means "that any enforcement . . . is totally forbidden," such a ruling is "manifestly strong medicine," which must be "employed by [a] Court sparingly and only as a last resort." *Broadrick*, 413 U.S. at 611, 93 S.Ct. at 2915. Consequently, "where there are a substantial number of situations to which a statute may validly be applied, we eschew reliance on the overbreadth doctrine." *United States v. Wallington*, 889 F.2d 573, 576 (5th Cir. 1989).

     2.       **The plaintiffs must show a substantial overinclusion of protected speech.**

     "The overbreadth claimant bears the burden of demonstrating, 'from the text of the law and from actual fact,' that substantial overbreadth exists." *Hicks*, 539 U.S. at 122, 123 S.Ct. at 2198 (brackets omitted). "'To prevail in a facial challenge,' however, 'it is not enough for a plaintiff to show "some" overbreadth'"; instead, "the overbreadth of a statute must not only be real, but substantial as well." *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 584, 122 S.Ct. 1700, 1713 (2002) (plurality opinion) (brackets omitted).

     A finding of "overbreadth" is premised on "a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick*, 413 U.S. at 612, 93 S.Ct. at 2916. The doctrine was originally fashioned to target a penal statute "which does not aim specifically at evils within the allowable area of state control but, on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech . . ." *Taxpayers for Vincent*, 466 U.S. at 799, 104 S.Ct. at 2125 (1984) (quoting *Thornhill v. State of Alabama*, 310 U.S. 88, 97, 60 S.Ct. 736, 742 (1940)).

"In short, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Taxpayers for Vincent*, 466 U.S. at 801, 104 S.Ct. at 2126. "The constitutional defect of an overbroad restraint on speech lies in the risk that the wide sweep of the restraint may chill protected expression." *Wallington*, 889 F.2d at 576.

A plaintiff cannot carry this burden through far-fetched hypotheticals. *National Endowment for the Arts v. Finley*, 524 U.S. 569, 583-84, 118 S.Ct. 2168, 2177 (1998) ( "we are reluctant . . . to invalidate legislation on the basis of its hypothetical application to situations not before the Court"); *J&B Ent.*, 152 F.3d at 367 ("although hypothetical examples in which the Ordinance may be overbroad can be imagined, these examples, in comparison to its legitimate sweep, are not substantial").

> It is clear, however, that the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge. . . . The bare possibility of unconstitutional application is not enough; the law is unconstitutionally overbroad only if it reaches substantially beyond the permissible scope of legislative regulation.

*Taxpayers for Vincent*, 466 U.S. at 800, 104 S.Ct. at 2126.

### 3.    The plaintiffs' allegations in this case do not show overbreadth.

To show overbreadth, the plaintiffs rely on ludicrous imaginary applications of the Act that, "when compared to its plainly legitimate sweep, [are] neither real nor substantial." *J&B Ent.*, 152 F.3d at 366." *See also CISPES*, 770 F.2d at 472 ("a statute need not fall in toto merely because it is capable of some unconstitutional applications") (citing *Broadrick* at 614, 93 S.Ct. at 2917). The plainly legitimate sweep of the Act is shown in part II above.

For example, the plaintiffs assert that "[t]wo members of a [three member] board talking

about President Bush, at a football game, facially violates the act." Brief at 19. The first obvious response here is that President Bush is unlikely to be a matter of "public business or public policy over which the governmental body has supervision or control." *See* II-A above. The Act would not reach a conversation between board members about President Bush's foreign policy. But if a quorum of the Alpine City Council discuss, without notice or an open meeting, whether to rename city hall as the George W. Bush Building, an action requiring a majority vote of the council, their conversation might run afoul of the statute if it is more than incidental.

In that regard, neither of the two football game hypotheticals (Brief at 19) describes a violation of the Act so long as "any discussion of public business is incidental to the social function . . ." *See* II-A above (quoting TEX. GOVT. CODE § 551.001(4)). Moreover, the reach of the Act is limited by the requirements of (1) a quorum, (2) deliberation, (3) public business, and, for criminal prosecution for conspiracy, (4) intent.

The plaintiffs insist that because of amendments (a) eliminating the requirement of "deliberations" and (b) making it unnecessary for a quorum to be physically present at the same time, a governing body member now risks violating the Act by merely answering the telephone, opening mail, reading a newspaper announcement, or listening to a radio interview. Brief at 14-17, 19-20 (citing, *inter alia*, Attorney General opinions GA-326, JC-313, and JC-307).

Most of the rulings on which the plaintiffs rely to construct their imaginary "parade of horribles"[5] concern section 551.143, which makes it a misdemeanor for a "member or group of

---

[5] *See Gospel Missions of America v. City of Los Angeles*, 419 F.3d 1042, 1050 (9th Cir. 2005) (in rejecting an overbreadth challenge to a criminal statute because the plaintiff "has not demonstrated that [the law] chill[s] a 'substantial' amount of protected speech in relation to its many legitimate applications," agreeing with the trial court that the plaintiff "does not develop its 'parade of horribles'").

members of a governmental body [to] *knowingly* conspire[] to circumvent [the Act] by meeting in numbers less than a quorum for the purpose of secret deliberations in violation of [the Act]." *Id.* (emphasis added).

As the Attorney General has explained, a violation of this section requires "proof of [members'] culpable mental state." Tex. Atty. Gen. Op. GA-326, 2005 WL 1190504, *4 (Tex. A.G.). If, for example, a county commissioner "makes successive telephone calls to" two other commissioners (a quorum) to "discuss[] a matter which has already been posted for the next regularly scheduled Commissioners' Court meeting and urges either directly or impliedly that [the other commissioners] vote in a certain way," he would violate the Act only if he is "operating with the requisite culpable mental state," which is "a fact question . . ."[6] *Id.*

> We stress, however, that under section 551.143, there is no violation unless a member or members "knowingly conspire" to circumvent the Act's open meetings requirement by meeting in numbers of less than a quorum.  And under section 551.144, a member must "knowingly" participate in a closed meeting.

Tex. Atty. Gen. Op. JC-307, 2000 WL 1731174, *7 (Tex. A.G.).

The holding that deliberations, as defined by section 551.001(2), are not an element of the offense, applies only to the situation prohibited by section 551.001(4)(B), in which a quorum is briefed in a closed meeting[7] by a third party on a matter of public business.  A quorum is a requirement for both subsections (2) and (4)(B).  Rulings that a quorum need not be physically

---

[6] "Whether any specific behavior violates the Open Meetings Act is generally a question of fact." Tex. Atty. Gen. Op. JC-203, 2000 WL 345900, *2 (Tex. A.G.) (citing *Bexar Medina Atascosa Water Dist. v. Bexar Medina Atascosa Landowners' Ass'n*, 2 S.W.3d 459, 461 n.2 (Tex. App. – San Antonio 1999, pet. denied)).

[7] The plaintiffs posit that the Act could be violated "if a third party attends an *open meeting* and asks questions or makes a statement about board matters." Brief at 15 (emphasis added).  But if the meeting is *open*, by definition there is no violation of the Open Meetings Act.

19

present simply recognize the modern realities of teleconferencing and cyber-conferencing, through which a quorum of members are able to deliberate and decide matters without being in each others' physical presence.

"The Open Meetings Act's two definitions of the term 'meeting' include as an element either (i) a deliberation involving a quorum of the governmental body, or (ii) the physical presence of a quorum." Tex. Atty. Gen. Op. GA-0098, 2003 WL 22076938, *2 (Tex. A.G.)  "If a quorum was not present or involved in deliberations under the definition of meeting in section 551.001(4), the informational meeting was not a meeting subject to the Open Meetings Act." *Id.*  "[T]he holding of serial, closed, quorumless meetings could give rise to a prosecution under section 551.143(a)," *id.* at *3, but only if, as discussed above, the intent of the participants is to circumvent the Act.

**B.      The Texas Open Meetings Act is not Unconstitutionally Vague.**

"Striking down [a law] as facially void for vagueness is a disfavored judicial exercise." *Schleifer ex rel. Schleifer v. City of Charlottesville*, 159 F.3d 843, 853 (4th Cir. 1998). "For criminal statutes 'we employ [a] two-part void-for-vagueness test' ..." *Ford Motor Co. v. Texas Department of Transportation*, 264 F.3d 493, 507 (5th Cir. 2001) (citation and brackets omitted).  Under this standard, a statute is constitutional so long as "it 'defines the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Smallwood v. Johnson*, 73 F.3d 1343, 135-52 (5th Cir. 1996) (brackets omitted).

The Supreme Court has observed that while "[w]ords inevitably contain germs of uncertainty and . . . there may be disputes over the meaning of . . . terms," that does not render a statute

unconstitutionally vague. *Broadrick* at 608, 93 S.Ct. at 2913. "[T]here are limitations in the English language with respect to being both specific and manageably brief . . ." *Id.* at 608, 93 S.Ct. at 2913-14. Thus, a law is not unconstitutionally vague if "it requires a person to conform his conduct to an imprecise but comprehensible normative standard." *Village of Hoffman Estates*, 455 U.S. at 495 n. 7, 102 S.Ct. at 1191 n. 7. A statute need not achieve "the wholly consistent academic definition of abstract terms," nor provide "mathematical certainty [in its] language." *CISPES*, 770 F.2d at 476, 477.

> Yet clarity even in a criminal code can be a receding mirage. Thus the vagueness doctrine cannot "convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited."

*Schleifer*, 159 F.3d at 853 (quoting *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957 (1972)).

"Because the [Open Meetings Act] as applied to [Rangra and Monclova] is not vague, [the plaintiffs] may proceed on [their] facial vagueness challenge only if the [Act]'s effect on legitimate expression is 'real and substantial and the language of the [statute] is not readily subject to a narrowing construction by the state courts.'" *J&B Ent.*, 152 F.3d at 368. "'Real and substantial' for a facial vagueness test has the same meaning as for a facial overbreadth challenge. *Id.*

As with their approach to overbreadth, the plaintiffs premise their vagueness challenge on (1) disagreements as to the meaning of certain provisions and (2) hypothetical situations in which they imagine a lack of clarity. That there is room for differences of opinion as to whether particular conduct violates the Act does not render the statute unconstitutionally vague. *Hill v. Colorado*, 530 U.S. 703, 733, 120 S.Ct. 2480, 2498 (2000); *Broadrick* at 608, 93 S.Ct. at 2913.

21

"A statute is not unconstitutionally vague merely because [plaintiffs] can raise uncertainty about its application to the facts of their case." *Ford Motor Co.*, 264 F.3d at 509.  Even if "Texas courts have demonstrated some confusion regarding the" meaning of key provisions (which the State defendants do not concede), "this ambiguity can have no effect on [plaintiffs'] understanding of what conduct is prohibited by Section[s]" 551.001(4) and 551.143-144. *Smallwood*, 73 F.3d at 1351.

"[W]hile there is little doubt that imagination can conjure up hypothetical cases in which the meaning of these terms will be in nice question, because we are condemned to the use of words, we can never expect mathematical certainty from our language." *Hill*, 530 U.S. at 733, 120 S.Ct. at 2498 (brackets added; citation, internal quotation marks, and brackets omitted). Rather, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Id.*

It is thus not enough for the plaintiffs to show, if they could, that the Act is unclear at the outer margins of its potential application.  "A statute is unconstitutionally vague 'only where no standard of conduct is outlined at all; when no core of prohibited activity is defined.'" *Ford Motor Co.*, 264 F.3d at 509.  *See also Village of Hoffman Estates*, 455 U.S. at 495 n. 7, 102 S.Ct. at 1191 n. 7.  As described in II-A above, the Texas Open Meetings Act "sets forth a core of prohibited conduct with sufficient definiteness to guide those who must interpret it." *J&B Ent.*, 152 F.3d at 369.

## CONCLUSION

Because the plaintiffs' suit is jurisdictionally barred, the Court need not reach the merits of the plaintiffs' claims. But if does, the suit should still be dismissed because the conduct for which the plaintiffs were indicted does not constitute speech protected by the First Amendment.  Even if

the First Amendment applies here, the Texas Open Meetings Act is not unconstitutionally overbroad

or vague.  Accordingly, the Court should dismiss the plaintiffs' suit for lack of jurisdiction under

Rule 12(b)(1) or for failure to state a claim on which relief may be granted under Rule 12(b)(6).

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

BARRY R. McBEE
First Assistant Attorney General

EDWARD D. BURBACH
Deputy Attorney General for Litigation

JEFF L. ROSE, Chief,
General Litigation Division


JAMES C. TODD
Texas Bar No. 20094700
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX

23

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been sent by first-class mail on this 8th day of November, 2005 to:

Dick DeGuerin
DEGUERIN DICKSON & HENNESSY
1018 Preston Ave., 7th Floor
Houston, Texas 77002

Rod Ponton
Attorney at Law
2301 North Hwy 118
P.O. Box 9760
Alpine, Texas 79831

Steve Houston
Brewster County Attorney
P.O. Box 388
Marathon, Texas 79842

JAMES C. TODD
Assistant Attorney General